IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DEBBIE JEAN SMITH, | ) | CASE NO. 5:13-cv-01045 |
| | ) | |
| Plaintiff, | ) | JUDGE LESLEY WELLS |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | KATHLEEN B. BURKE |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY ADMINISTRATION, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Defendant. | ) | |

Plaintiff Debbie Jean Smith ("Plaintiff" or "Smith") seeks judicial review of the final decision of Defendant Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits ("DIB").  Doc. 1.  This Court has jurisdiction pursuant to 42 U.S.C. § 405(g).  This matter has been referred to the undersigned Magistrate Judge for a Report and Recommendation pursuant to Local Rule 72.2.

The ALJ stated that he gave some weight to the opinion of consultative examining physician Dr. Paul T. Scheatzle that Smith would require more frequent rest breaks than the average worker.  However, the ALJ failed to account for that limitation in his residual functional capacity ("RFC") assessment and failed to explain the reason for omitting that limitation from the RFC.  Accordingly, the Court should **REVERSE and REMAND** the Commissioner's decision.

1

## I.  Procedural History

On or about November 24, 2009, Smith filed an application for DIB.[1]  Tr. 73, 74, 112.

Smith alleged a disability onset date of May 8, 2008.  Tr. 112, 136.  She alleged disability due to

depression, anxiety, fibromyalgia, foot surgery, shoulder pain, and right arm problems.  Tr.  74,

75, 85, 140.  After initial denial by the state agency (Tr. 75-77), and denial upon reconsideration

(Tr. 85-91), upon Smith's request (Tr. 94-108), an administrative hearing was held before

Administrative Law Judge James P. Nguyen ("ALJ") on October 24, 2011 (Tr. 39-72).

In his December 8, 2011, decision, the ALJ determined that Smith had not been under a

disability from May 8, 2008, through the date of the decision.  Tr. 17-30.  Smith requested

review of the ALJ's decision by the Appeals Council.  Tr. 10-11.  On March 16, 2013, the

Appeals Council denied Smith's request for review, making the ALJ's decision the final decision

of the Commissioner.  Tr. 4-6.

## II. Evidence

### A.  Personal and vocational evidence

Smith was born in 1957 and was 54 years old at the time of the hearing.  Tr. 45, 46, 112.

She is married and lives with her husband in a one-story home.  Tr. 46.  She has one son and two

grandchildren.  Tr. 584.  She has no dependent children and no one else resides with Smith and

her husband.  Tr. 46.  She has a high school education.  Tr. 47.   She last worked in 2008.  Tr. 47.

---

[1] The Application Summary for Disability Insurance Benefits indicates that Smith completed her application for social security benefits on December 3, 2014.  Tr. 112.  The Disability Determinations and Transmittals and the Disability Report – Field Office – Form indicate that Smith's application filing date was November 24, 2009.  Tr. 73, 74, 136.  The ALJ concluded that Smith protectively filed on November 24, 2009.  Tr. 17.  Neither party challenges the ALJ's finding and that finding is supported by the record.  Tr. 73, 74, 136.  Thus, the undersigned accepts the ALJ's finding that Smith protectively filed for social security benefits on November 24, 2009.

During the administrative hearing, Smith indicated that she stopped working because of "[t]he pain and everything that I have with my health issues."  Tr. 47.

**B.     Medical evidence[2]**

       **1.     Mental impairments**

            **a.     Treating psychiatrist**

Smith has a reported history of depression beginning in her teenage years (Tr. 530) with some outpatient mental health treatment in 1999 and 2000 (Tr. 210-224). On January 11, 2011, Smith saw psychiatrist Rajnikant Kothari, M.D., for an initial evaluation.  Tr. 584-593.   She reported that her primary care physician had prescribed her Wellbutrin and Effexor.  Tr. 586. She had not started the Wellbutrin because she had concerns about adding another medication. Tr. 586.  Dr. Kothari concluded that Smith had major depressive disorder and advised Smith to continue the Effexor, add Wellbutrin, and follow up in four weeks.  Tr. 585.

Smith saw Dr. Kothari on February 8, 2011, and reported side effects from the Wellbutrin.  Tr. 606.  She was very nervous.  Tr. 606.  Dr. Kothari continued the Effexor and prescribed Remeron.  Tr. 606.   Thereafter, Smith saw Dr. Kothari on June 27, 2011.  Tr.  606. She was anxious and felt hopeless, helpless.  Tr. 606.  She had gained weight and wanted to change her medication.  Tr. 606.  Dr. Kothari made changes to her medication.  Tr. 606.

On July 12, 2011, Dr. Kothari completed a Medical Source Statement wherein he offered his opinions with respect to Smith's abilities in the areas of social interaction (Section A);

---

[2] Smith has multiple physical and mental impairments.  She raises issues relating to the ALJ's consideration of certain medical opinions and limitations set forth therein.  To provide background for Smith's arguments and the Commissioner's counterarguments, medical opinion evidence relevant to those arguments is summarized herein.

sustained concentration and persistence (Section B); and adaptation (Section C).[3]  Tr. 608-609.

He diagnosed her with major depressive disorder, recurrent, and assessed a GAF of 41.[4]  Tr.609.

In the area of social interaction, Dr. Kothari rated Smith's ability to work in coordination

with or close proximity to others without distracting them or exhibiting behavioral extremes as

moderately impaired.  Tr. 608.  He rated her ability to accept instruction from or respond

appropriately to criticism from supervisors or superiors; respond appropriately to co-workers or

peers; and relate to the general public and maintain socially appropriate behavior as moderately

to severely impaired.  Tr. 608.

In the area of sustained concentration and persistence, Dr. Kothari rated Smith's ability to

carry through simple instructions and complete uncomplicated tasks independently as slightly

impaired.  Tr. 608.  He rated her ability to work in cooperation with or in proximity to others

without being distracted by them and her ability to use appropriate judgment in a work setting as

moderately impaired.  Tr. 608.  He rated her ability to perform and complete work tasks at a

consistent pace as moderately to severely impaired.  Tr. 608.

In the area of adaptation, Dr. Kothari rated Smith's ability to care for herself and her

ability to tolerate low stress work on a sustained basis as slightly impaired.  Tr. 609.  He rated

her ability to respond appropriately to change in a work setting and her ability to remember

locations and workday procedures and instructions as moderately impaired.  Tr. 608.  He rated

her ability to behave predictably, reliably and in an emotionally stable manner as moderately to

---

[3] The heading of section C in the Medical Source Statement is "Adaption."  Tr. 608.

[4] GAF (Global Assessment of Functioning) considers psychological, social and occupational functioning on a hypothetical continuum of mental health illnesses.  *See* American Psychiatric Association: *Diagnostic & Statistical Manual of Mental Health Disorders*, Fourth Edition, Text Revision.  Washington, DC, American Psychiatric Association, 2000 ("DSM-IV-TR"), at 34.  A GAF score between 41 and 50 indicates "serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., few friends, unable to keep a job)."  *Id.*

severely impaired.  Tr. 609.  He rated her ability to tolerate high stress on a sustained basis as severely impaired.  Tr. 608-609.  Dr. Kothari also noted that Smith's condition was likely to deteriorate if she was placed under stress of a job because she "becomes inappropriate in her reactions to others or she walks out.  She cannot tolerate any stress without being verbally aggressive."  Tr. 609.

### b.    Consultative psychologist

On August 4, 2010, William E. Mohler, M.A., saw Smith for a consultative evaluation. Tr. 529-532.  He diagnosed Smith with depressive disorder NOS and anxiety disorder NOS.  Tr. 531.  He assessed a GAF of 60.[5]  Tr. 531-532.  He rated Smith's mental abilities in the four work-related areas as follows:

1. The claimant's mental ability to relate to others, including fellow workers and supervisors is moderately impaired by her depression and anxiety symptoms.  Intellectually, she would be able to relate sufficiently to coworkers and supervisors for simple repetitive tasks as well as some tasks requiring more complicated instructions and procedures.

2. The claimant's mental ability to understand, remember and follow instructions is unimpaired.  Memory skills are in the upper part of the low normal range.

3. The claimant's mental ability to maintain attention, concentration, persistence and pace to perform simple repetitive tasks is moderately impaired.  She does demonstrate problems with attention span and particularly distractibility which are exacerbated by her fairly significant depression.

4. The claimant's mental ability to withstand the stress and pressures associated with day-to-day work activity is markedly impaired.  Her depression, and to a larger extent anxiety, substantially reduces her wherewithal to deal with additional stressors.

Tr. 532.

---

[5] GAF Global Assessment of Functioning) considers psychological, social and occupational functioning on a hypothetical continuum of mental health illnesses.  *See* American Psychiatric Association: *Diagnostic & Statistical Manual of Mental Health Disorders*, Fourth Edition, Text Revision.  Washington, DC, American Psychiatric Association, 2000 ("DSM-IV-TR"), at 34.  A GAF score between 51 and 60 indicates moderate symptoms or moderate difficulty in social, occupational, or school functioning.  *Id.*

### 2.  Physical impairments

#### a.  Consultative physician

On September 24, 2010, Paul T. Scheatzle, D.O., saw Smith and completed a consultative

physical evaluation.  Tr. 554-560.   He offered the following opinions regarding her limitations:

> With respect to sitting, this is unlimited.  Standing frequently with change of position of every 30 minutes.  Walking one city block with stop for rest.
>
> Would require more frequent rest breaks than the average worker due to fibromyalgia with decreased endurance and increased fatigue noted.   Would recommend overall light duty work environment with lifting up to 20 pounds occasionally or 10 pounds more frequently.  Carrying at 10 pounds.  Handling objects frequently.   Hearing, speaking, traveling, understanding, memory, concentration, persistence, and adaptation are within normal limits.   Social interaction diminished subjectively with history of anxiety and depression.

Tr. 559-560.

#### b.  Reviewing physician

On October 12, 2010, state agency reviewing physician Arthur Sagone, M.D., reviewed

Smith's file and offered his opinions with respect to Smith's physical impairments.  Tr. 566-573.

He opined that Smith could perform light work with frequent climbing of ramps and stairs and

only occasional climbing of ladders, ropes, and scaffolds; balancing; stooping; kneeling;

crouching; and crawling.  Tr. 567-568.  Smith was limited in her ability to reach, including

overhead reaching.  Tr. 569.  Smith was not limited in her ability to handle, finger, or feel.  Tr.

569.  He indicated that Smith had no visual, communicative, or environmental limitations.  Tr.

569-570.

Dr. Sagone agreed with Dr. Scheatzle's opinion that Smith would be capable of light

work.  Tr. 572.  However, Dr. Sagone disagreed with Dr. Scheatzle's opinion that Smith would

require a change of position every 30 minutes and would require more frequent rest breaks than

the average worker due to fibromyalgia.  Tr. 572.  Dr. Sagone disagreed with that portion of Dr.

Scheatzle's opinion because he believed that those opinions were based on Smith's self-reports, which, according to Dr. Sagone, were of limited credibility.  Tr. 572.  Thus, Dr. Sagone gave only partial weight to Dr. Scheatzle's opinions.  Tr.  572.

**C.      Testimonial evidence**

**1.      Plaintiff's testimony**

Smith was represented by counsel and testified at the hearing as follows (Tr. 45-63):

Smith discussed the problems that she has had with her feet, including a ganglion cyst and arthritis.  Tr.  47-48.  She has had three surgeries on her right foot and stated that her left foot is getting worse.  Tr. 47-48.  As a result of the problems with her feet, Smith stated that she can stand for about 10 minutes at time before having to sit down.  Tr. 48.  She has to sit for a couple of minutes before starting to walk again.  Tr. 49.  She also indicated that she can sit for only about 10 minutes at a time.  Tr. 48.  Based on walking her dog around her yard, she estimated being able to walk about 50 or 60 steps or about 10 minutes.  Tr. 48-49.  She does not have any problems with driving.  Tr. 49.  She can lift about a gallon of milk.  Tr. 49.

In November 2010, Smith went to the foot and ankle clinic and reported that her orthotics were not helping.  Tr. 55.  She had new orthotics made and they help with her arches.  Tr. 55.  As a result of having a bone removed from her foot, it still hurts to walk.  Tr. 55.  She is seeking additional treatment to address that issue.  Tr. 55.   Smith described her fibromyalgia as feeling like she has the flu 24 hours a day.  Tr. 55.  She aches, has burning pain, and swelling.  Tr. 55.  She likes to lie down and apply a heating pad everywhere.  Tr. 55.  She has had trigger point injections on several occasions.  Tr. 55.  The injections help for about two to four weeks.  Tr. 56.  She indicated that her restless leg syndrome makes her feel like she has been jogging non-stop.  Tr. 56.  Her hips and back are constantly hurting.  Tr. 61.  During the hearing, Smith was up and

down two or three times because of her pain. Tr. 61. For pain in her hips and feet, Smith takes prescription Naproxen and Arthritis Tylenol. Tr. 58. Because of her pain, Smith lies down three or four times for an hour at a time during the day. Tr. 62.

When discussing her depression, Smith stated that she cries a lot, does not want to be around people, and feels worthless. Tr. 56. She takes medication which helps. Tr. 56. Beginning in January 2011, Smith started mental health treatment with a new doctor, Dr. Kothari. Tr. 56-57. Prior to seeing Dr. Kothari, Smith's family care physician prescribed medication for her depression. Tr. 57-58. Also, prior to 2008, Smith had seen a different doctor for mental health treatment. Tr. 57.

Smith described her typical day as including waking at 7:00 a.m., letting her dog out,[6] taking some medication, going back to bed, and getting up and eating a little breakfast. Tr. 49-50. She uses a CPAP machine at night for sleeping and she also has to use the machine sometimes during the day to keep from falling asleep. Tr. 50. Because of the pain in her feet and back, she is unable to stand too long at the sink so it takes her almost the entire day to do a sink of dishes. Tr. 50. She does a little dusting around the house and a little laundry. Tr. 50. She uses the computer for Facebook and to research health issues. Tr. 50. Smith's husband does most of the cooking. Tr. 50. If her husband is not home, she fixes something simple like a can of soup or oatmeal. Tr. 50-51. Smith indicated that she usually does not leave her house unless she has to go to a doctor's appointment. Tr. 52. However, she indicated that she does sometimes go to the grocery store with her husband and, once each month, she attends a VFW auxiliary meeting. Tr. 52. She is the Chaplain of the VFW auxiliary. Tr. 60. The auxiliary meetings last about 30 minutes. Tr. 60.

---

[6] Smith has a border collie/husky. Tr. 60. Smith's sister helps her take her dog to a place for grooming. Tr. 60-61. Her grandson cleans up after her dog in the backyard because bending down and getting back up is very difficult for her. Tr. 61.

Smith's sister and her friends visit her on occasion.  Tr. 52.  They usually talk and have coffee or tea. Tr. 52.   She enjoys reading.  Tr. 52.   Because she has difficultly sitting, when reading, she reads a little, gets up, and then can sit back down and continue reading.  Tr. 59.

Smith had recently been seen for congestive heart failure.  Tr. 53.  Her doctor recommended that she use a CPAP machine and that she see a cardiologist because she stopped breathing every 45 seconds while she was sleeping.  Tr. 53.  She reported that the CPAP machine was helping her breathe and sleep.  Tr. 53.

In September 2009, Smith was kicked by a horse while putting grain out on the family's farm.[7]  Tr. 53.  Other than providing the horses with a scoop of grain each day, Smith did not care for the horses.  Tr. 54.  Her husband took care of them.  Tr. 54.  She had been able to ride horses years ago but is unable to ride them now.  Tr. 59.

### 2.    Vocational expert's testimony

 Vocational Expert Mary Beth Copar ("VE") testified at the hearing.  Tr. 63-70.   The VE described Smith's past work.  Tr. 65.  She worked as (1) a deli worker, an unskilled, light level position;[8] (2) a hospital cleaner, an unskilled, medium level position performed by Smith at the light level; (3) a driver, a semi-skilled, medium level position performed by Smith at the light level; (4) a nurse's aide, a semi-skilled, medium level position; and (5) a janitor, an unskilled, heavy level position, performed by Smith at the light level.  Tr. 65-66.

The ALJ asked the VE to assume a hypothetical individual of Smith's age and with the same educational and work experience as Smith who is able to lift and carry 20 pounds occasionally and 10 pounds frequently; can stand and walk for 6 hours during an 8-hour day and

---

[7] As of the hearing, Smith and her husband were no longer living on the farm.  Tr. 54.

[8] The VE explained that, despite the assistant manager job title listed by Smith on the work history report (Tr. 168-179), Smith did not supervise, hire or train anyone so the VE listed the position as deli worker (Tr. 65-66).  Smith agreed with the VE's description of her work history.  Tr. 66.

sit for 6 hours during an 8-hour day; requires a sit/stand option with a change in positions every hour; can perform occasional overhead reaching; can understand, remember and carry out simple one to two-step job instructions, but would be unable to perform work that would require directing others, abstract thought or planning; can maintain attention and concentration to perform simple, routine and repetitive tasks in a work environment free of fast-paced production requirements or quotas; can have only superficial contact with coworkers, supervisors, and the general public[9] and can only work in an environment with occasional changes in the work setting and occasional work-related decision making. Tr. 66.

The VE indicated that the described individual would be unable to perform Smith's past work. Tr. 67. The VE also indicated, however, that the described individual would be able to perform other work, including (1) marker, an unskilled, light level position, with over 300,000 positions available nationally and approximately 2,000 locally; (2) order caller, an unskilled, light level position, with over 250,000 positions available nationally and approximately 2,000 locally; and (3) ticket seller, an unskilled, light level position, with over 250,000 positions available nationally and approximately 2,500 locally.[10] Tr. 67. The VE indicated that, if the sit/stand option was modified to every 30 minutes rather than every hour, the number of available jobs would not change. Tr. 67-68. However, the VE indicated that, if the described individual was off task 20% of the day, there would be no jobs available to the individual. Tr. 68.

In response to questions from Smith's counsel, the VE indicated that, if the hypothetical individual was limited to sitting for no more than 4 hours in an 8-hour workday and standing for

---

[9] The ALJ clarified that the hypothetical individual could have telephonic contact with the public. Tr. 67.

[10] The VE indicated that the number of jobs that she listed as being available accounted for a reduction based on the sit/stand option and interaction with the public limitation. Tr. 67-68.

no more than 4 hours in an 8-hour workday, the VE's testimony regarding the availability of jobs would not change. Tr. 69. The VE also indicated that, as long as the individual did not stray from her work area, the listed jobs could be performed sitting or standing and would remain available to the individual if she had to change position every 10 minutes because of physical impairments, i.e., sit for 10 minutes and then stand for a few minutes before sitting again. Tr. 69. The VE further indicated that, in order to maintain employment, an individual would need to be on task 85% of the workday and be off task no more than 15% of the workday. Tr. 69-70. Finally, if an individual required 4 additional 10-minute breaks, in addition to the normal mid-morning and mid-afternoon break, there would be no work available to that individual. Tr. 70.

### III. Standard for Disability

Under the Act, 42 U.S.C § 423(a), eligibility for benefit payments depends on the existence of a disability. "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Furthermore:

> [A]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . .

42 U.S.C. § 423(d)(2).

In making a determination as to disability under this definition, an ALJ is required to follow a five-step sequential analysis set out in agency regulations. The five steps can be summarized as follows:

1. If the claimant is doing substantial gainful activity, he is not disabled.

2.      If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

3.      If claimant is not doing substantial gainful activity, is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

4.      If the impairment does not meet or equal a listed impairment, the ALJ must assess the claimant's residual functional capacity and use it to determine if claimant's impairment prevents him from doing past relevant work.  If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5.      If claimant is unable to perform past relevant work, he is not disabled if, based on his vocational factors and residual functional capacity, he is capable of performing other work that exists in significant numbers in the national economy.

20 C.F.R. § 404.1520; *see also Bowen v. Yuckert*, 482 U.S. 137, 140-42, 96 L. Ed. 2d 119, 107 S. Ct. 2287 (1987).  Under this sequential analysis, the claimant has the burden of proof at Steps One through Four.  *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997).  The burden shifts to the Commissioner at Step Five to establish whether the claimant has the RFC and vocational factors to perform work available in the national economy.  *Id.*

## IV. The ALJ's Decision

In his December 8, 2011, decision, the ALJ found that:[11]

1.      Smith meets the insured status requirements through March 31, 2012.  Tr. 19.

2.      Smith has not engaged in substantial gainful activity since May 8, 2008, the alleged onset date.  Tr. 19.

3.      Smith has the following severe impairments: fibromyalgia, arthritis-status post multiple foot surgeries, irritable bowel syndrome, hypothyroidism, osteopenia, right shoulder impingement and tendinitis, obstructive sleep apnea, restless leg syndrome, impaired left ventricular dysfunction,

---

[11] The ALJ's findings are summarized.

diastolic congestive heart failure, diabetes mellitus, hypertension, obesity, depressive disorder and anxiety disorder.  Tr. 19.

4.  Smith does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments, including Listing 1.04, 3.10, 4.02, 5.06, 9.0, 11.14, 12.04 and 12.06.[12] Tr. 19-21.

5.  Smith has the RFC to perform light work, except that she must be afforded the opportunity to alternate between sitting and standing positions once each thirty minutes.  She can occasionally perform overhead reaching.  She can understand, remember and carry out simple one to two step instructions, but would be unable to perform work that would require directing others, abstract thought or planning.  She can maintain attention and concentration to perform simple, routine and repetitive tasks in a work environment free of fast-paced production requirements or quotas.  She can have only superficial contact with co-workers, supervisors and the general public, but this provision would not preclude telephonic contact.  She can work in an environment with occasional changes to the work setting and occasional work-related decision making.  Tr. 21-28.

6.  Smith is unable to perform any past relevant work.  Tr. 28-29.

7.  Smith was born in 1957 and was 51 years old, defined as an individual closely approaching advanced age, on the alleged disability onset date. Tr. 29.

8.  Smith has at least a high school education and is able to communicate in English.  Tr. 29.

9.  Transferability of job skills is not material to the determination of disability.  Tr. 29.

10.  Considering her age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Smith can perform, including marker, order caller, and ticket seller. Tr. 29-30.

Based on the foregoing, the ALJ determined that Smith had not been under a disability

from May 8, 2008, through the date of the decision.  Tr. 30.

---

[12] The Listing of Impairments (commonly referred to as Listing or Listings) is found in 20 C.F.R. pt. 404, Subpt. P, App. 1, and describes impairments for each of the major body systems that the Social Security Administration considers to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience.  20 C.F.R. § 404.1525.

## V. Parties' Arguments

### A.     Plaintiff's Arguments

With respect to her mental impairments, Smith argues that the ALJ improperly discounted the opinion of her treating psychiatrist Rajnikant Kothari, M.D., and the opinion of consultative examining psychologist William Mohler, M.A. Doc. 15, pp. 7-13. She asserts that, although the limitations included in both opinions were consistent with each other and/or supported by the record, the ALJ did not appropriately account for those limitations in the RFC. Doc. 15, pp. 7-13. In particular, Smith argues that Dr. Mohler and Dr. Kothari both found that Smith had marked limitations in her ability to withstand the stress and pressures of day-to-day work but the ALJ failed to include limitations on stress tolerance in the RFC. Doc. 15, p. 10. Additionally, Smith argues that the ALJ did not give appropriate weight and/or failed to adequately explain the weight provided to the opinions and failed to provide "good reasons" for the weight provided. Doc. 15, pp. 13-17.

With respect to her physical impairments, Smith argues that the ALJ did not properly account for limitations contained in consultative examining physician Paul T. Scheatzle's opinion. Doc. 15, pp. 13-18. Smith asserts that, although the ALJ provided some weight to the opinion of Dr. Scheatzle, he failed to account for Dr. Scheatzle's opinion that Smith would require more frequent rest breaks than the average worker due to her fibromyalgia. Doc. 15, pp. 13-18.

### B.     Defendant's Arguments

Defendant asserts that the ALJ properly considered the opinions of Dr. Kothari and Dr. Mohler when determining Smith's RFC. Doc. 17, pp. 11-14. She argues that the ALJ's decision to provide little weight to Dr. Kothari's opinion and the ALJ's reasons for the weight given that

opinion are supported by substantial evidence.  Doc. 17, pp. 11-13.  Further, Defendant points

out that the ALJ explained why he gave only some weight to Dr. Mohler's opinion regarding

Smith's ability to adapt and argues that the ALJ was not obligated to provide greater weight to

Dr. Kothari's opinion simply because Dr. Mohler's opinion was consistent with that opinion.

Doc. 17, pp. 13-14.

 With respect to Smith's argument that the ALJ did not properly account for Dr.

Scheatzle's opinion, the Defendant asserts that the ALJ appropriately gave only some weight to

that opinion and the record as a whole does not support Dr. Scheatzle's opinion that Smith would

require more frequent rest breaks than the average worker.  Doc. 17, pp. 14-18.  In support of her

argument, Defendant points to the fact that state agency reviewing physician Arthur Sagone,

M.D., concluded that Dr. Scheatzle's opinion was only entitled to partial weight because his

opinions appeared to be based on Smith's self-reports which Dr. Sagone concluded had limited

credibility.  Doc. 17, p. 14.  Defendant also asserts that Smith's level of activity, minimal

medical findings, and relatively conservative treatment did not warrant a finding that Smith

required additional breaks.  Doc. 17, pp. 14-15.

### VI. Law & Analysis

 A reviewing court must affirm the Commissioner's conclusions absent a determination

that the Commissioner has failed to apply the correct legal standards or has made findings of fact

unsupported by substantial evidence in the record.  42 U.S.C. § 405(g); *Wright v. Massanari*, 321

F.3d 611, 614 (6th Cir. 2003).  "Substantial evidence is more than a scintilla of evidence but less

than a preponderance and is such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028,

1030 (6th Cir. 1992) (quoting *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681

(6th Cir. 1989).  A court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility."  *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

**A.      The ALJ did not sufficiently explain his treatment of consultative examining physician Dr. Scheatzle's opinion**

Smith argues that the ALJ erred because the ALJ gave some weight to the opinion of Dr. Scheatzle but then failed to account for or explain why he did not include a limitation to account for Dr. Scheatzle's opinion that Smith "[w]ould require more frequent rest breaks than the average worker due to fibromyalgia with decreased endurance and increased fatigue noted." Doc. 15, p. 14.  Smith asserts that the ALJ's failure to incorporate such a limitation in the RFC was critical in light of the VE's testimony that the need for three or four additional 10 minute breaks during the workday would preclude work.  Doc. 15, p. 14 (referencing Tr. 70, VE testimony).  The Commissioner argues that the record supports the ALJ's decision not to include a limitation of more frequent rest breaks in the RFC.  Doc. 17, pp. 14-15.

The responsibility for determining a claimant's residual functional capacity rests with the ALJ.  20 C.F.R. § 404.1546(c).  "[T]he adjudicator's assessment of an individual's RFC may be the most critical finding contributing to the final determination or decision about disability." SSR No. 96-5p, 1996 WL 374183, *5 (July 2, 1996).  An RFC assessment is "based on consideration of all relevant evidence in the case record."  *Id.* at *5.  "Adjudicators must weigh medical source statements under the rules set out in 20 CFR 404.1527 and 416.927, providing appropriate explanations for accepting or rejecting such opinions."  *Id.*  Social security rulings further provide that, "[i]f the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted."  SSR No. 96-8p, 1996 WL 374184, *7 (July 2, 1996).

The ALJ stated the following with respect to Dr. Scheatzle's opinion:

> Some weight was accorded the opinion of the consultative physical examiner, Paul T. Scheatzle, D.O., that the claimant could perform work at the light level of exertion, but should be restricted to the carrying of ten pounds, that she would need to shift position each thirty minutes, could walk one city block, would require more frequent rest breaks and that her social interaction would be diminished subjectively.  Dr. Scheatzle examined the claimant and was reporting within the bounds of his professional certifications, yet his comments on her social interaction relied entirely on the claimant's reporting, thereby substituting her judgment for his own.

Tr. 27.

Consistent with his decision to give some weight to Dr. Scheatzle's opinion, in the RFC, the ALJ limited Smith to light work and provided for her ability to shift positions each thirty minutes.  Tr. 21.  The ALJ explained his reservations with respect to Dr. Scheatzle's opinions regarding Smith's social interaction.  Tr. 27.  However, the ALJ did not account for more frequent rest breaks in the RFC nor did he indicate why he rejected that portion of the opinion.  Although assessment of Smith's RFC was reserved to the ALJ and the ALJ may not have been required to adopt every limitation contained in Dr. Scheatzle's opinion, the ALJ expressly stated that he was providing some weight to the part of Dr. Scheatzle's opinion regarding the need for more frequent breaks but failed to explain his reasons for not incorporating that part of Dr. Scheatzle's opinion in the RFC.

The Commissioner suggests that the ALJ's decision not to account for more frequent rest breaks was proper because such a limitation was not supported by the record.  Doc. 17, p. 14.  In support of her argument, the Commissioner relies on state agency reviewing physician Dr. Sagone's opinion that only partial weight should be provided to Dr. Scheatzle's opinion because the part of the opinion regarding a change in position and more frequent rest breaks appeared to be based on Smith's subjective complaints, which Dr. Sagone found were not fully credible.  Doc. 17, p. 14.  Also, the Commissioner asserts that Dr. Scheatzle's findings that Smith retained

full strength and showed no signs of muscle atrophy were not findings one would expect to be seen in someone whose fatigue limited her daily functioning.  Doc. 17, pp. 14-15.  Further, the Commissioner states that the record reflects that Smith walked 30 minutes for exercise (Tr. 281, 284, 295), engaged in a fair range of daily activities, and engaged in heavy exertional activity such as packing boxes for a move and caring for a horse on her farm.  Doc. 17, p. 15.

Based on the foregoing, the Commissioner argues that, because of "her level of activity, minimal medical findings, and relatively conservative treatment, a finding that Plaintiff required additional breaks during the day was not warranted."  Doc. 17, p. 15.  However, since the ALJ did not provide the explanation that the Commissioner now provides for discounting Dr. Scheatzle's opinion,[13] the Commissioner's argument constitutes improper *post hoc* rationalization.  See *Simpson v. Comm'r of Soc. Sec.*, 344 Fed. Appx. 181, 192 (6th Cir. 2009) (a reviewing court must assess the propriety of the administrative agency's action on the grounds invoked by the agency) (citing *SEC v. Cherney Corp.*, 332 U.S. 194, 196 (1947)).

Since the ALJ did not account for Dr. Scheatzle's opinion that Smith would require more frequent rest breaks in the RFC, the ALJ, consistent with social security regulations and rulings, including SSR No. 96-5p and SSR No. 96-8p, should have explained why he rejected that portion of Dr. Scheatzle's opinion.  Without such an explanation, and in light of the VE's testimony that three or four additional 10 minute breaks would preclude work (Tr. 70), the undersigned is unable to determine whether the Commissioner's decision is supported by

---

[13] The ALJ discussed Smith's daily activities and found that Smith had engaged in some activities that were not consistent with her alleged disabling pain, including being kicked by a horse that she was attending to, packing boxes while moving, and climbing ladders and cleaning.  Tr. 22.  While these findings may have been a basis for the ALJ's decision that Smith's allegations were not entirely credible, the ALJ's decision does not make clear that it was these findings that led him not to account for Dr. Scheatzle's opinion that Smith would require more frequent rest breaks than the average worker.  The undersigned also notes that, with respect to Smith attending to her horse, Smith testified that she was kicked by her horse when she was putting grain out for the horse.  Tr. 53-54.  Smith indicated that each horse got one scoop once each day and that, other than putting grain out for the horses, she did not do anything else to care for the horses.  Tr. 54.  Her husband took care of them.  Tr. 54.

substantial evidence.  Accordingly, although further proceedings may not result in a finding of disability, the undersigned recommends that the Court reverse and remand the Commissioner's decision for further consideration and/or analysis in accordance with the applicable social security regulations and rulings, including SSR No. 96-5p and SSR No. 96-8p.

**B.     The ALJ properly considered and explained the weight provided to treating psychiatrist Dr. Kothari**

Smith argues that the ALJ erred in not providing controlling weight to Dr. Kothari's medical source statement because his opinion was well supported by Smith's mental status examinations and fully supported by the findings of consultative examining physician Dr. Mohler.[14]  Doc. 15, pp 7-13.  The Commissioner asserts that the ALJ evaluated Dr. Kothari's opinion in accordance with the regulations.  Doc. 17, pp. 11-14.

Under the treating physician rule, "[a]n ALJ must give the opinion of a treating source controlling weight if he finds the opinion well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with the other substantial evidence in the case record."  *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).  If an ALJ decides to give a treating source's opinion less than controlling weight, he must give "good reasons" for doing so that are sufficiently specific to make clear to any subsequent reviewers the weight given to the treating physician's opinion and the reasons for that weight.  *Wilson*, 378 F.3d at 544.  Further, when deciding the weight to be given, an ALJ must consider factors such as (1) the length of the treatment relationship and the frequency of the examination, (2) the nature and extent of the treatment relationship, (3) the supportability of the opinion, (4) the consistency of the opinion with the record as a whole, (5) the specialization of the source, and (6) any other factors that tend to support or contradict the opinion.  *Bowen v. Comm'r of Soc Sec.*,

---

[14] Smith also appears to present a secondary argument with respect to the ALJ's treatment of other limitations contained within Dr. Mohler's opinion, which is discussed below.  Doc. 15, p. 11.

478 F.3d 742, 747 (6th Cir. 2007); 20 C.F.R. § 404.1527(c).  While an ALJ's decision must

include "good reasons" for the weight provided, the ALJ is not obliged to provide "an exhaustive

factor-by-factor analysis."  *See Francis v. Comm'r of Soc. Sec*., 414 Fed. Appx. 802, 804 (6th

Cir. 2011).

> With respect to Dr. Kothari's opinion, the ALJ stated:

> Little weight was accorded the opinion of the claimant's treating source,
> Rajnikant Kothari, M.D., that the claimant exhibited moderate to severe
> impairment of the ability to relate to others, moderate to severe impairment of her
> ability to complete work tasks at a consistent work pace, moderate impairment of her
> ability to work in proximity to others without distraction, moderate impairment of
> her ability to use appropriate judgment in a work setting, moderate to severe
> impairment of her ability to behave in an appropriate manner and severe
> impairment of her ability to tolerate high stress on a sustained basis.  Dr. Kothari
> treated the claimant and was reporting within the bounds of his professional
> certifications, yet his opinion provided no narrative to explain his conclusions,
> was not consistent with the relatively benign mental status examinations included
> in the record and was rendered after seeing the claimant on only three occasions.

Tr. 28.

> Consistent with the treating physician rule, the ALJ provided reasons for providing little

weight to Dr. Kothari's opinion and made those reasons sufficiently clear to allow for subsequent

review.  Smith takes issue with the ALJ's conclusion that Dr. Kothari's opinion was not

consistent with the relatively benign mental status examinations included in the record.  Doc. 15,

pp. 9-10.  She asserts that her mental status findings were not benign but were "profound" and

"impaired" and therefore the ALJ's evaluation of Dr. Kothari's opinion was not supported by the

record.  Doc. 15, pp. 9-10.   However, the ALJ reviewed and evaluated the medical evidence and

determined that the evidence showed relatively benign mental status examination results.  Tr. 26.

More particularly, the ALJ stated:

> Mental status examinations included in the record have consistently reported
> benign results, such as one dated October 8, 2010, which indicated that the
> claimant presented with a mildly flat affect, but without symptoms of anxiety,

with a pleasant and cooperative demeanor, organized thinking, without suicidal or homicidal ideation (29F/2 [Tr. 563]) or one dated January 11, 2011, which indicated that the claimant presented in a profoundly depressed mood, with a dull, flat affect, but with a pleasant and cooperative demeanor, with no flight of ideas or pressured speech, no hallucinations or delusions (34F/3 [Tr. 585]).

Tr. 26.

While Smith disagrees with the ALJ's conclusion that the mental status examinations showed relatively benign results, it is not for this Court to "try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).   Further, even though Smith argues that the evidence shows that her mental status examination results were not entirely benign, Smith has not demonstrated that the ALJ's conclusion is not supported by substantial evidence. Thus, the Commissioner's decision cannot be overturned on that basis. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003) ("if substantial evidence, or even a preponderance of the evidence, supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ," the Commissioner's decision cannot be overturned).

Additionally, lack of consistency with the relatively benign mental status examination results was not the ALJ's only reason for providing little weight to Dr. Kothari's opinion.  The ALJ also found that Dr. Kothari had not included a narrative to explain his conclusions[15] and that he had rendered the opinion after having seen Smith only three times.  Tr. 28.   Smith does not raise specific challenges to the ALJ's other two reasons for discounting Dr. Kothari's opinion and thus has waived those arguments.[16]  *See McPherson v. Kelsey*, 125 F.3d 989, 995–996 (6th

---

[15] Except for answering one question and providing his diagnoses, Dr. Kothari's July 12, 2011, opinion consists of check box answers.  Tr. 608-609.

[16] Even if Smith had raised arguments with respect to the ALJ's other reasons for discounting Dr. Kothari's opinion, it is not likely that those challenges would have merit because, when determining what weight to provide to Dr. Kothari's opinion, it was appropriate for the ALJ to consider the length of the treatment relationship and frequency of examination as all as the supportability of the opinion.  *See* 20 C.F.R. § 404.1527(c)(2) (providing that, "the

Cir. 1997) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones.") (internal citations omitted).

Smith also argues that the ALJ erred by not adopting Dr. Kothari's opinion that Smith was severely limited in her ability to tolerate stress on a sustained basis because that opinion was supported by Dr. Mohler's findings, which included his opinion that Smith's mental ability to withstand the stress and pressure associated with day-to-day work activity was markedly impaired. Doc. 15, p. 10; Tr. 532. Dr. Kothari rated Smith's ability to withstand stress under the area of adaptation. Tr. 608-609. The ALJ considered the opinion of Dr. Mohler and explained that, while Dr. Mohler's opinion was provided some weight, his opinion regarding Smith's ability to adapt was not supported by the record, noting for example that Smith had demonstrated the ability to move her household with little detrimental psychological effect. Tr. 28.

The responsibility for determining a claimant's residual functional capacity rests with the ALJ. *See* 20 C.F.R. § 404.1546(c). As demonstrated, the ALJ explained and supported his decision to discount Dr. Kothari's and Dr. Mohler's opinions that Smith was severely or markedly impaired in her ability to adapt, i.e., withstand stress, and the ALJ sufficiently accounted for the mental impairment limitations that the ALJ found were supported by the record when he concluded that Smith had the following RFC:

> She can understand, remember and carry out simple one to two step instructions, but would be unable to perform work that would require directing others, abstract thought or planning. She can maintain attention and concentration to perform simple, routine and repetitive tasks in a work environment free of fast-paced

---

longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give the source's medical opinion); 20 C.F.R. § 404.1527(c)(3) (providing that, "The better an explanation a source provides for an opinion, the more weight we will give the opinion").

production requirements or quotas.  She can have only superficial contact with co-
workers, supervisors and the general public, but this provision would not preclude
telephonic contact.  She can work in an environment with occasional changes to
the work setting and occasional work-related decisions making.

Tr. 21.  Thus, Smith's claim that the ALJ was required to formulate a more restrictive RFC with
respect to Smith's stress tolerance simply because Dr. Kothari and Dr. Mohler offered opinions
that were similar with respect to Smith's ability to withstand stress is unpersuasive.[17]

To the extent that Smith separately argues that the ALJ also failed to account for Dr.
Mohler's and Dr. Kothari's opinions that Smith was moderately impaired in her abilities to relate
to others, including fellow workers and supervisors and maintain concentration, persistence and
pace to perform simple repetitive tasks, her argument is without merit.  Doc. 15, p. 11.  As
discussed herein, the ALJ properly considered and sufficiently explained his analysis with
respect to both opinions and/or adequately accounted for the limitations that he found supported
by the record.   For example, in the RFC, the ALJ provided for limitations in social interaction
and accounted for limitations in pace, persistence and concentration by limiting Smith to simple,
routine and repetitive tasks in a work environment free of fast-paced production requirements or
quotas.  Tr. 21.

In sum, the ALJ's decision makes clear that the ALJ considered Dr. Kothari's opinion in
accordance with the treating physician rule and provided "good reasons" for the weight he gave
that opinion that were sufficiently specific to make clear to subsequent reviewers the weight
given to the treating physician's opinion and the reasons for that weight.  *Wilson*, 378 F.3d at

---

[17] The undersigned also notes that, while Dr. Kothari opined that Smith was severely impaired in her ability to
tolerate high stress on a sustained basis, he also opined that Smith was only slightly impaired in her ability to
tolerate low stress on a sustained basis.  Tr. 609.  As discussed, the ALJ sufficiently explained his reasons for
discounting Dr. Kothari's severe limitations.  Further, in the RFC, the ALJ sufficiently accounted for a slight
impairment in Smith's ability to sustain low stress.  Tr. 21.

544.    Accordingly, Smith's treating physician argument is without merit and not a basis for reversal and remand.

### VII. Conclusion and Recommendation

For the reasons stated above, the Court should **REVERSE and REMAND** the Commissioner's decision for further proceedings consistent with this Report and Recommendation.[18]

Dated:  April 17, 2014

Kathleen B. Burke
United States Magistrate Judge

### OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  See *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).

---

[18] This recommendation should not be construed as a recommendation that Smith be deemed disabled on remand.

24